## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ANTHONY M. COTTONE, | : |
| | : |
| Defendant, and | : |
| | : |
| BOTANICA GROUP HOLDINGS, LLC, | : |
| | : |
| Relief Defendant. | : |

_____

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### I.    INTRODUCTION

1.    The Commission brings this action to enjoin further violations of the federal securities laws by, and obtain disgorgement and civil penalties from, defendant Anthony M. Cottone ("Cottone" or "Defendant") and to obtain disgorgement from relief defendant Botanica Group Holdings, LLC ("Botanica Group" or "Relief Defendant").

2.    From March 23, 2017 to July 31, 2017, Cottone and his now defunct unregistered investment adviser raised approximately $2.76 million from 11 investors in connection with the sale of preferred interests in a private fund through materially false and misleading representations and material omissions regarding the fund's use of investor proceeds, undisclosed conflicts of interest, and Cottone's background.  Cottone also misused and misappropriated the fund's assets.

In addition, Cottone sold the preferred interests in unregistered transactions and acted as an unregistered broker.

3.      By engaging in this conduct, Cottone violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]; Sections 10(b) and 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)(1)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 promulgated thereunder [17 C.F.R. § 275.206(4)-8]. Unless enjoined, Cottone is reasonably likely to continue to violate the federal securities laws.

## II.    DEFENDANT

4.      Cottone, 47, resides in Delray Beach, Florida. Cottone was the 100% owner and sole manager of Retirement Planning Institute LLC ("RPI"). Cottone was the sole manager of Secured Capital Strategies Fund, LLC ("Secured Florida") and 449 Auto LLC ("449 Auto"). Between May 2001 and January 2017, Cottone was associated with various broker dealers and investment advisers. On January 13, 2015, Cottone was charged with conspiracy to commit a crime against the United States by introducing misbranded prescription drugs into interstate commerce, a misdemeanor. Specifically, Cottone was charged with managing payment processing services for websites operated by his co-conspirators, knowing that his co-conspirators were using the websites to sell prescription drugs to consumers in the United States without a prescription. Cottone pled guilty and was sentenced in 2016 to one year of probation, a $25 special assessment, and a $2,500 fine. See Information, U.S. v. Cottone, No. 2:15-cr-00005-MPK-1 (W.D. Pa. Jan. 13, 2015), ECF No. 1. On July 19, 2018, the Florida Office of Financial Regulation denied Cottone's applications for registration as an associated person with

two broker-dealers for making material false statements regarding his misdemeanor charge on an application for registration.  Anthony M. Cottone, Case No. 87281-SR (Fla. OFR July 19, 2018) (final order).  On December 10, 2018, the Financial Industry Regulatory Authority ("FINRA") permanently barred Cottone from associating with any FINRA member for failure to respond to FINRA's request for information related to an investor complaint.  Cottone was also a Certified Financial Planner ("CFP") from 2011 until March 2020 when his certification was revoked due to FINRA's bar against him.

## III.    RELIEF DEFENDANT

5.    Botanica Group was a Florida limited liability company formed on May 24, 2017 with its principal place of business in Boca Raton, Florida until it was administratively dissolved in September 2018.

## IV.    RELATED ENTITIES AND INDIVIDUAL

6.    RPI was a Florida limited liability company formed on November 19, 2013 with its principal place of business in Boca Raton, Florida until it was administratively dissolved in September 2018.  On April 26, 2017, RPI became the manager of Secured Capital Strategies Fund, LLC f/k/a Legion Select Income Fund, LLC ("Secured Delaware" or the "Fund"), a private fund. RPI also managed Botanica Group.

7.    Secured Delaware was a Delaware limited liability company formed on March 9, 2017 with its principal place of business in Boca Raton, Florida, until January 2018 when its status was forfeited for failure to designate a registered agent.

8.    Secured Florida was a Florida limited liability company formed on May 15, 2017 with its principal place of business in Boca Raton, Florida until it was administratively dissolved in September 2018.  Cottone was the sole manager of Secured Florida and treated it and Secured

Delaware as a single interchangeable entity with Secured Florida receiving and disbursing Secured Delaware assets because Cottone never opened a bank account in Secured Delaware's name.

9.      449 Auto was a Florida limited liability company formed on October 9, 2017 with its principal place of business in Boca Raton, Florida until it was administratively dissolved in September 2018.

10.      Botanica was a Florida limited liability company formed on December 7, 2001 with its principal place of business in Orlando, Florida until it was administratively dissolved in September 2019.  During the relevant time, an associate of Cottone ("Associate") was the manager of Botanica.

11.      Crown Motors, Inc. d/b/a Voila Auto Group NSB, Voila Auto Group South, and Voila Auto Group West (collectively, "Voila") was a Florida corporation formed on August 17, 1998 with its principal place of business in Winter Park, Florida until it was administratively dissolved in September 2018.  Starting in or about September 2014, Voila Auto Group, LLC ("VAG") owned Voila, which operated three auto dealerships in Florida.  During the relevant time, Associate and his associates owned VAG.

12.      Jetport Legacy Holdings LLC ("Jetport") was a Florida limited liability company formed on April 27, 2017 with its principal place of business in Winter Park, Florida, until it was administratively dissolved in September 2019.  During the relevant time, Associate and certain of his business associates were the majority owners of Jetport.

## V.      JURISDICTION AND VENUE

13.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d) and

27(a) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa(a)]; and Sections 209(d) and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d) and 80b-14(a)].

14.     Venue is proper in the Southern District of Florida because:  (a) many of Cottone's acts and transactions constituting violations of the Securities Act, the Exchange Act, and the Advisers Act occurred in this District, and (b) Cottone resides in this District.

15.     In connection with the conduct alleged in this Complaint, Cottone, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## VI.     FACTUAL ALLEGATIONS

### A.     The Secured Delaware Offering

16.     Secured Delaware was formed on March 9, 2017 as a private fund to make loans to and equity investments in private companies.  Initially, a fund manager not affiliated with Cottone controlled Secured Delaware.  On April 26, 2017, RPI and Cottone took over all management interests and rights in Secured Delaware from the prior fund manager.  RPI, through Cottone, managed Secured Delaware in exchange for a disclosed 2% management fee.

17.     Cottone and RPI raised $2.76 million from 11 investors until the offering ceased in July 2017.  Three of the eleven, representing investments of $385,000, were investors Cottone solicited when the fund was controlled by the original fund manager.  The investments consisted of Secured Delaware preferred limited liability company interests ("preferred interests").  In its confidential offering memorandum ("COM"), Secured Delaware represented that investors would be entitled, to the extent earned, to an annual "Preferred Return" of 12%. Secured Delaware made its last payments to its investors in June 2018.

18.     Cottone solicited and provided prospective and actual investors with Secured Delaware offering documents including, among other things, various versions of the COM.  After Cottone and RPI took control of Secured Delaware, they modified the COM used by the original fund manager to reflect RPI's management of the company and included Cottone's biography.

19.     Cottone recommended the Secured Delaware investment to investors, sent investors offering materials and other documents necessary to make their investments, provided investors with wiring instructions, including to a bank account he controlled, and instructed one investor to mail the investment check to him.  Cottone also sent certain partially completed documents to some investors which contained an *X* next to places where the investors needed to sign the documents.  In addition, Cottone emailed certain investors fully executed subscription agreements evidencing their purchase.

20.     The role of the investors was limited to investing money.  They had no control over Secured Delaware or any loans or investments it would make.  They relied solely on Cottone and RPI to generate profits.  The preferred interests were investment contracts, and therefore securities, within the meaning of the Securities Act, the Exchange Act, and the Advisers Act.

### B.     Cottone Received Undisclosed Commissions and Misappropriated Secured Delaware Funds

21.     Between May 30, 2017 and October 10, 2018, Cottone received undisclosed commissions and misappropriated at least $134,000 from Secured Delaware.  Cottone received at least $189,000 from Secured Delaware.  Sometimes Cottone would refer to these monies as commissions and sometimes as a management fee.  However, under the COM, Secured Delaware represented that it would only pay commissions to registered broker-dealers or registered representatives of a broker-dealer, and Cottone was neither.   In addition, the maximum management fee RPI could have been entitled to under the management agreement was $55,000.

### C.   Cottone Misused Secured Delaware Investor Funds

#### 1.   Funds Used for the Benefit of Botanica Investors

22.    As described below, between May 9, 2017 and February 21, 2018, Cottone used approximately $113,000 of Secured Delaware assets, either directly or indirectly through loans issued to Jetport, to make payments to Botanica investors.

23.    Between April 2016 and November 2016, Cottone sold Botanica promissory notes in an unrelated securities offering to 11 investors, raising at least $1.7 million.  The Associate, Botanica's manager, sent the majority of these funds to Voila to help operate three auto dealerships, but by March 2017, Voila informed Botanica that it would no longer be able to make payments related to the Botanica investments. Voila made its last payment to Botanica investors in May 2017.

24.    In May 2017, Cottone used $17,047 of Secured Delaware investor funds to make payments either directly to Botanica investors or by providing Botanica and Voila the funds to make the payments to Botanica investors.

25.    After VAG and Voila failed, certain of its principals formed Jetport to own and operate a new auto dealership.  On May 26, 2017, RPI entered into a management agreement with Jetport under which Jetport would pay RPI an $8,000 per month management fee.  That same day, Secured Florida agreed to loan Jetport $1 million ("Jetport Loan") using Secured Delaware funds. The net proceeds of the Jetport Loan, after certain holdbacks, came to $710,000.  Cottone then directed individuals associated with Jetport to use some of the loan proceeds to make payments to Botanica investors.  Between May 31, 2017 and July 17, 2017, those payments totaled $33,600.

26.    Secured Florida and Jetport also entered into a $1.5 million Secured Revolving Promissory Note effective June 1, 2017 ("Jetport Note") under which Cottone, through Secured

Florida, again held back 6 months interest on the loan, 6 months of Botanica interest payments, 6 months of RPI's $8,000 a month management fee, and other fees.

27.     Between June 28, 2017 and December 18, 2017, Cottone transferred $66,681 of Secured Delaware funds to an account owned by Botanica Group, an entity managed by RPI that Cottone formed to hold collateral securing the payment of the Botanica promissory notes.  Between June 29, 2017 and February 21, 2018, Cottone used those funds to make payments of at least $62,500 to Botanica investors.

### 2.     Funds Used for the Benefit of 449 Auto

28.     Cottone misused Secured Delaware assets by opening, funding and managing an auto dealer, 449 Auto, for Secured Delaware.  Starting and investing in a Cottone-controlled entity was contrary to Secured Delaware's use of proceeds as set forth in its COM, which stated that Secured Delaware's investments would undergo underwriting and due diligence.   Between September 2017 and November 2017, Cottone used $135,000 of Secured Delaware assets to buy and repair cars for 449 Auto.  In November 2017, Cottone sent at least an additional $274,000 of Secured Delaware assets to 449 Auto bank accounts he controlled.  Cottone co-mingled these funds with other funds, which he used for auto-related and other expenses.  In total, between September 25, 2017 and November 28, 2017, Cottone used at least $409,000 of Secured Delaware assets for 449 Auto before the venture failed.

### D.     Cottone's Material Misrepresentations and Omissions

29.     Secured Delaware's COM stated Secured Delaware was established to provide capital to small and medium sized business owners through debt and/or equity financing and that net proceeds of the offering would be used to initiate loans and equity investments.  Secured Delaware's COM further stated RPI would manage the underwriting of Secured Delaware's loans

and equity investments and perform certain due diligence. There were no disclosures which informed investors or put them on notice that Cottone could use Secured Delaware assets to start an operating business managed by him and forego the need to underwrite and conduct due diligence on the investment.

30.     Cottone touted his background to investors orally and in Secured Delaware's COM and other materials provided to investors highlighting his background as a CFP and his past work at several large "wire-houses" and insurance advisory firms. In an April 6, 2017 letter emailed to one Secured Delaware investor, Cottone stated that he was a CFP and that a CFP is a highly-trained investment adviser that must put the investor's interest above all else. He also orally told at least one investor he was a fiduciary and another that he held a fiduciary license and had fiduciary duties to protect the investor's funds.

31.     Cottone had ultimate authority for the accuracy of the above material representations to investors, which are false and misleading for the reasons set out below:

- Beginning while he was still offering and selling Secured Delaware securities to investors, Cottone used Secured Delaware funds to make payments to Botanica investors in connection with a prior unrelated securities offering.

- Soon after the offering ended in July 2017, Cottone began using Secured Delaware funds to operate 449 Auto, a start-up car dealership formed and managed by Cottone for Secured Delaware.

- Cottone used Secured Delaware funds to pay himself commissions when he was neither a registered broker-dealer nor a registered representative of a broker-dealer, including while the Secured Delaware offering was ongoing.

- Cottone had an undisclosed conflict stemming from his entity RPI's management agreement with Jetport, an entity that borrowed Secured Delaware funds, and from Cottone withholding funds from the Jetport loan to pay RPI's management fees.

- Cottone used Secured Delaware funds to pay RPI's management fee from Jetport, including while the Secured Delaware offering was ongoing.

- While touting his background as a finance professional and CFP and his fiduciary duty to investors, Cottone failed to disclose to investors his guilty plea and 2016 sentence to the misdemeanor charge of conspiracy to introduce into interstate commerce misbranded prescription drugs by managing the process through which the drugs were paid for.

## VII.  CLAIMS FOR RELIEF

### Count 1 – Violation of Sections 5(a) and 5(c) of the Securities Act
### (Against Cottone)

32.  The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

33.  From in or about March 2017 through in or about July 2017, Cottone, directly or indirectly:

(a)  made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)  carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c)  made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

34.    By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

**Count 2 – Violation of Section 17(a)(1) of the Securities Act**
**(Against Cottone)**

35.    The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

36.    From in or about March 2017 through in or about October 2018, Cottone, in the offer or sale of the securities described herein by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

37.    By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

**Count 3 -- Violation of Section 17(a)(2) of the Securities Act**
**(Against Cottone)**

38.    The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

39.    From in or about March 2017 through in or about October 2018, Cottone, in the offer or sale of the securities described herein by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

40.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### Count 4 -- Violation of Section 17(a)(3) of the Securities Act
### (Against Cottone)

41.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

42.     From in or about March 2017 through in or about October 2018, Cottone, in the offer or sale of the securities described herein by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

43.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

### Count 5 -- Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (Against Cottone)

44.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

45.     From in or about March 2017 through in or about October 2018, Cottone, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of the securities described herein.

46.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

**Count 6 -- Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act**
**(Against Cottone)**

47.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

48.     From in or about March 2017 through in or about October 2018, Cottone, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of the securities described herein.

49.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

**Count 7 -- Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act**
**(Against Cottone)**

50.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

51.     From in or about March 2017 through in or about October 2018, Cottone, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of the securities described herein.

52.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

## Count 8 -- Violation of Section 15(a)(1) of the Exchange Act
## (Against Cottone)

53.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

54.     From in or about March 2017 through in or about July 2017, Cottone, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while he was not registered with the Commission as a broker or dealer or when he was not associated with an entity registered with the Commission as a broker-dealer.

55.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## Count 9 -- Violation of Section 206(1) of the Advisers Act
## (Against Cottone)

56.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

57.     Cottone, for compensation, engaged in the business of directly advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. Cottone was therefore an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

58.     From in or about March 2017 through in or about October 2018, Cottone, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

59.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

### Count 10 -- Violation of Section 206(2) of the Advisers Act
### (Against Cottone)

60.     The Commission adopts by reference paragraphs 1 through 31 and 57 of this Complaint.

61.     From in or about March 2017 through in or about October 2018, Cottone, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

62.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

### Count 11 -- Violation of Section 206(4) and Rule 206(4)-8(b) of the Advisers Act
### (Against Cottone)

63.     The Commission adopts by reference paragraphs 1 through 31 and 57 of this Complaint.

64.     Secured Delaware was a pooled investment vehicle within the meaning of Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)] of the Advisers Act.

65.     From in or about March 2017 through in or about October 2018, Cottone, while acting as investment adviser to a pooled investment vehicle, directly or indirectly (a) made untrue statements of material fact and omitted to state material facts necessary to make statements made, in the light of the circumstances under which they were made, not misleading, to investors and prospective investors in Secured Delaware, and (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

66.     By reason of the foregoing, Cottone violated and, unless enjoined, is reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8(a) promulgated thereunder [17 C.F.R. §206(4)-8(a)].

### Count 12 – Unjust Enrichment
### (Against Botanica Group)

67.     The Commission adopts by reference paragraphs 1 through 31 of this Complaint.

68.     Botanica Group received funds from Secured Delaware that Secured Delaware had obtained from investors, as described in paragraph 27 of this Complaint.

69.     Botanica Group lacked a legitimate claim to those funds and property.

70.     Botanica Group obtained these funds and property as part of the securities law violations alleged above, under circumstances in which it is not just or equitable for it to retain the funds.

71.     By reason of the foregoing, Botanica Group has been unjustly enriched and must disgorge its ill-gotten gains.

## VIII.   RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find that Cottone committed the violations of the federal securities laws alleged in this Complaint, and:

### A.     Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Cottone from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]; Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78o(a)(1)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 promulgated thereunder [17 C.F.R. §206(4)-8].

**B.      Disgorgement**

Issue an Order directing Cottone and Botanica Group (jointly and severally with Cottone) to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

**C.      Civil Penalty**

Issue an Order directing Cottone to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

**D.      Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**E.      Retain Jurisdiction**

Retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable petition or motion by the Commission for additional relief within the jurisdiction of this Court.

January 10, 2022                              Respectfully submitted,

By:      _/s/ Andrew O. Schiff_
Senior Trial Counsel
S.D. Fla. No. A5501900
Direct Dial:  (305) 982-6390
Email:  schiffa@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone:  (305) 982-6300
Facsimile:  (305) 536-4146